## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | |
|---|---|
| SAMI MOHSEN,<br><br>               Plaintiff,<br><br>v.<br><br>J.J.R., INC. dba LAWRENCE KIA,<br><br>Please Serve:<br><br>Registered Agent:<br>Alyssa Brockert<br>1216 East 23rd Street<br>Lawrence, Kansas 66046,<br><br>               Defendant. | Case No. |

## COMPLAINT FOR DAMAGES

Plaintiff, Sami Mohsen, ("Plaintiff"), by and through his counsel, for his Complaint for

Damages against J.J.R, Inc. dba Lawrence Kia, hereby states and alleges as follows:

## PARTIES

1.     Plaintiff, Sami Mohsen, is over age 18 and an adult resident of Johnson County,

Kansas.

2.     Defendant J.J.R, Inc. (Kansas Business ID No. 4532099) is a Kansas domestic for-

profit corporation that does business in Lawrence, Kansas as Lawrence Kia. Defendant J.J.R, Inc.

can be served care of its registered agent and General Counsel, Alyssa Brockert, 1216 East 23rd

Street, Lawrence, Kansas 66046.

## JURISDICTION AND VENUE

3.     The Fair Labor Standards Act ("FLSA") authorizes court actions by private parties

to recover damages for violation of the FLSA's wage and hour provisions. Plaintiff asserts a

claim for violations of the FLSA below. Jurisdiction over Plaintiff's FLSA claim is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      This Court also has supplemental jurisdiction over the state claim for wrongful termination in violation of public policy – whistleblowing – for Defendant's violations of Kansas' Consumer Protection Act, Kansas state law, and federal law – that is asserted herein pursuant to 28 U.S.C. § 1367(a).

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff was employed in Kansas and the events giving rise to his claims occurred in this jurisdiction.

6.      This Court has personal jurisdiction over the Defendant because it employed Plaintiff in this judicial district in Douglas County, Kansas, it maintains a place of business in this judicial district in Douglas County, Kansas, it transacts business in this judicial district in Douglas County, Kansas, and because the acts complained of in this Complaint that violated federal law occurred in Wyandotte County, Kansas.

## FACTUAL BACKGROUND

7.      Plaintiff was employed by the Defendant in Lawrence, Kansas from April 9, 2021 to April 8, 2025, when he was unlawfully terminated in violation of state and federal law, as described herein.

8.      During the time of his employment, Plaintiff worked for Defendant for approximately 80 hours a week, based on a uniform and consistent weekly schedule of 14-16 hours per day Monday and Wednesday through Saturday.

9.    During this time, Defendant failed to pay Plaintiff an hourly wage and/or any overtime for hours worked in excess of 40 hours per week and to which he was due, resulting in unpaid overtime wages owed to Plaintiff.

10.    Instead, during this time, Defendant misclassified Plaintiff as a "manager" or exempt employee although Plaintiff was not an executive, supervisory, or managerial employee and did not qualify for an exemption under the FLSA.

11.    Defendant purposefully misclassified Plaintiff as an exempt employee in order to avoid payment of an hourly wage and overtime to him. Instead, Defendant paid Plaintiff a monthly draw and an additional commission at the time of his termination that did not qualify for the exemption at 29 U.S.C. § 207(i) because more than half his compensation was not for commissions on goods or services.

12.    Defendant's conduct was willful in that Defendant intentionally and purposefully failed to pay Plaintiff overtime for all of the time worked in excess of 40 hours a week.

13.    Defendant's willful failure to pay Plaintiff overtime for all hours worked in excess of 40 hours during all relevant work weeks throughout his employment and within the three-year period of time preceding the filing of this Complaint is in violation of the Fair Labor Standards Act, at 29 U.S.C. § 207.

14.    During the Plaintiff's employment, he became aware of illegal, deceptive and fraudulent conduct perpetrated at the highest levels of management, and encouraged by owner Chintaka Rajapaksha and other management, including Kevin Morrissy and James P. Morrissey, who are co-owners and officers and directors of Defendant, and that was being distilled in other finance managers and salesmen in their training, through monetary incentives, and an aggressive, heavy-handed "Wolf of Wall Street" management style that focused on profit maximization

through unlawful and deceptive conduct, which is described below. Plaintiff believed in good faith that Defendant's practices were intended to take advantage of and to harm customers and the public and he had seen hundreds of customers being taken advantage of throughout his tenure.

15.    On or about March 7, 2025, Plaintiff requested a meeting with Chintaka Rajapaksha, one of the owners with day-to-day management responsibilities, and Alyssa Brockett, Corporate Counsel, to discuss the concerns he had concerning the unlawful and illegal conduct that he had discovered and to show them examples of the unlawful and illegal conduct he had witnessed, observed and discovered through his everyday employment, observation, participation in meetings, review of Defendant's deals paperwork, and the admissions of Chintaka Rajapaksha and Defendant's employees to such conduct.

16.    The unlawful and illegal conduct was a core aspect of Defendant's business practice, and flowed top down from a Jordan Belfort "Wolf of Wall Street" management style from Chintaka Rajapaksha, and other senior management, that Plaintiff understood was systematically and sophistically designed to squeeze every possible dollar out of susceptible and unsuspecting customers and also deceive the entities providing financing to Defendant's customers, as follows:

    a.    *Discriminatory and Predatory Practices.* Plaintiff believed in good faith and reported to Defendant that the dealership engaged in deceptive and unlawful practices that took advantage of and exploited vulnerable customers, including, particularly, minorities, older individuals, or first-time buyers, and which included "protected consumers" as defined by Kan. Stat. Ann. § 50-676. This discriminatory conduct includes the conduct described below, such as disguising add-on fees and backend products into the price of the vehicles,

inflating prices for add-ons and back-end products, underreporting trade ins and down payments, and offering unfavorable credit terms;

b. *Sale of Unnecessary and Worthless Warranties and Add-on Products.* Plaintiff believed in good faith and reported to Defendant that the dealership sold to its customers unnecessary warranties and other add-ons and back-end products that are worthless and that the costs for these warranties, add-ons, and back-end products were hidden from lenders by including the warranty costs into the vehicle price and inflating loan requests despite lender guidelines limiting after-market add-ons and inflating the amount financed by the consumer borrowers, increasing customers' financial risk and leading to higher interest rates. In cases of vehicle repossession or total loss, neither lenders nor consumers could recoup losses because the products were not itemized;

c. *Bait and Switch Tactics*. Plaintiff believed in good faith and reported to Defendant that the dealership was using misleading online advertisements to lure customers, and bait and switch tactics to out of town purchasers who would come to Lawrence Kia and would discover that the advertised prices were a scam and misleading;

d. *Deceptive Trade-in and Down Payment Practices*.  Plaintiff believed in good faith and reported to Defendant that dealership was under-reporting trade-in values and falsified down payment amounts;

e. *Underreporting of sales tax revenue.* Plaintiff believed in good faith and reported to Defendant that the underreported and defrauded the state of sales tax revenue;

f. *Packing Loans and Packed Payments.* Plaintiff believed in good faith and reported to Defendant that the dealership often inflated the consumer's monthly payments through the addition of add-ons and back-end products;

g. *High Interest Rates.* Plaintiff believed in good faith and reported to Defendant that the dealership routinely only offered the highest rate on loans to consumer purchases;

h. *Straw Purchases.* Plaintiff believed in good faith and reported to Defendant that he had witnessed instances of "straw purchases," (where someone buys a car on behalf of another without disclosing it) that the dealership had routinely overlooked;

i. *Coercion.* Plaintiff believed in good faith and reported to Defendant that the dealership was requiring customers to give 5-star Google reviews before finalizing paperwork as a form of coercion and to manipulate the dealership's reputation; and

j. *Violations of Federal Law and Office of Foreign Assets Control and Red Flag Reporting.* Plaintiff believed in good faith and reported to Defendant that the dealership was routinely violating regulations of the Office of Foreign Assets Control ("OFAC") to prevent transactions with individuals or entities subject to U.S. economic sanctions, buy failing to perform OFAC check, overriding non-complaint reporting, and falsely reporting OFAC reports.

17. Plaintiff also reported his concerns to Defendant about the direction the Defendant was undertaking where it was hiring more and more young and inexperienced sales people, and had developed specialized training and incentive programs, to teach and train them how to

perpetrate the illegal and unlawful conduct described herein using Defendant's systematic and sophisticated business practices.

18.     Finally, Plaintiff reported his concerns to Defendant that it appeared to him that Defendant was continuing the same or similar practices he understood were the subject of years of litigation and arbitrations by Defendant's customers against Defendant, and which had been the subject of publicity and scrutiny by regulators and lenders.

19.     Notably, an arbitrator found the dealership liable for more than $14.8 million in compensatory and punitive damages for violations of Kansas' Consumer Protection Act in December 2022, for the same and similarly designed conduct that Plaintiff had observed and discovered through his everyday employment, observation, participation in meetings, review of Defendant's deals paperwork, and the admissions of Chintaka Rajapaksha and Defendant's employees to such conduct as set forth above.

20.     After making these reports directly to Chintaka Rajapaksha and Alyssa Brockett and engaging in this protected activity, Plaintiff was immediately and unlawfully retaliated against by Defendant. Among other things, the following day Plaintiff was disciplined and falsely accused of misappropriating a small amount of money (in order to put some documentation in his employee file), Plaintiff incurred a significant loss of pay, Plaintiff's movements at work and his keystrokes were monitored, his phone was confiscated by Defendant when he arrived to work, and he was ridiculed and threatened privately and publicly by Chintaka Rajapaksha, all of which culminated in his employment being terminated.

21.     On or about April 7, 2025, Plaintiff requested a second meeting with Chintaka Rajapaksha and Alyssa Brockett, Corporate Counsel, to discuss Defendant's lack of progress on addressing the concerns he reported and in remedying the unlawful and illegal conduct that he had

discovered was being employed by Defendant in its operations, and to address the retaliation he had been dealing with.

22.    Instead, Plaintiff was terminated effective April 8, 2025 by Barandon Blond, General Sales Manager, on behalf of and at the direction of Defendant, in retaliation for his protected acts of whistleblowing.

23.    The reasons given for Plaintiff's termination at the time of the termination were false, pretextual, retaliatory, and unlawful.

24.    As a direct, foreseeable, and proximate result of the retaliation and his unlawful termination, Plaintiff has been damaged and has incurred substantial lost income, lost future income, and lost employment benefits. Further, he has had trouble finding work on his field of expertise because of negative references and communications by Defendant to potential employers causing him to the "blackballed" in the area.

25.    Plaintiff has also suffered reputational damage, and non-economic damages, such as emotional distress, anxiety, stress, and depression, for which he has sought professional treatment, as well as attorneys' fees and expenses.

### COUNT I
### Violation of the Fair Labor Standards Act of 1938

26.    Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs.

27.    At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq*.

28.    The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in commerce, or engaged in the

production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

29.     Defendant was, and is, subject to the recordkeeping, minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in commerce, and the production of goods for commerce, and its employees are engaged in commerce.

30.     At all relevant times, Defendant has been and continues to be an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

31.     At all relevant times, Defendant has employed, and/or continues to employ, "employee[s]," including Plaintiff.

32.     The FLSA requires employers, such as Defendant, to compensate all non-exempt employees overtime compensation, at a rate of not less than one-and-one-half the minimum wage, for work performed in excess of forty hours in a work week.

33.     The FLSA, at 29 U.S.C. § 207(i), exempts certain categories of employees from overtime pay obligations. In this instance, § 207(i) provides an exemption to the overtime requirements for employees of a retail or service establishment if (1) the employee's regular rate of pay is in excess of one and one-half times the minimum hourly rate applicable to him ..., and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. 29 U.S.C. § 207(i).

34.     Defendant did not qualify for the overtime exemption with respect to Plaintiff because the Defendant was not a "retail or service establishment" within the purpose or scope of the FLSA's consumer protection provisions, and not more than half his compensation was for commissions on goods or services.

35.     Under the circumstances, and in light of Defendant's misclassification of Plaintiff as an exempt employee, Defendant has not acted in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

36.     As a result, thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for the three-year period preceding the filing of this lawsuit.

37.     Alternatively, should the Court find Defendant did not act willfully in failing to pay wages, Plaintiff is still entitled to an award of prejudgment interest at the applicable legal rate.

38.     As a result of the aforesaid willful violations of the FLSA, wages and/or overtime compensation has been unlawfully withheld by Defendant from Plaintiff for which Defendant J.J.R, Inc. is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs of this action.

WHEREFORE, Plaintiff demands judgment against Defendant and prays for compensatory damages; liquidated damages; attorneys' fees and costs; pre-judgment and post-judgment interest as provided by law; and such other relief as the Court deems fair and equitable.

## COUNT II
### Wrongful Termination in Violation of Public Policy

39.     Plaintiff hereby incorporates each of his allegations above in this Complaint for Damages as though they were set forth fully below.

40.     Defendant unlawfully terminated Plaintiff in retaliation for his good faith and legally protected reporting to his employers as set forth above that Defendant's sales and financing

practices involved actual and/or potential violations of Kansas law, including Kansas' Consumer Protection Act, and federal laws, such as the reporting requirements under regulations form the Office of Foreign Assets Control, and raised serious liability concerns.

41.     Plaintiff engaged in activity protected by Kansas and other law through his reports to Defendant described herein.

42.     At the time of his reports, it would have been clear to a reasonably objective person that Defendant was engaged in illegal activity prohibited by both Kansas and federal law, including laws to protect the general public and general welfare, such as Kansas' Consumer Protection Act, from fraud and deceptive practices.

43.     As set forth above, after making these reports directly to Chintaka Rajapaksha and Alyssa Brockett and engaging in this protected activity, Plaintiff was immediately and unlawfully retaliated against by Defendant. Among other things, the following day Plaintiff was disciplined and falsely accused of misappropriating a small amount of money (in order to put some documentation in his employee file), Plaintiff incurred a significant loss of pay, Plaintiff's movements at work and his keystrokes were monitored, his phone was confiscated by Defendant when he arrived to work, and he was ridiculed and threatened privately and publicly by Chintaka Rajapaksha, all of which culminated in his employment being terminated.

44.     Defendant had knowledge of Plaintiff's complaints and reporting prior to terminating his employment, and was directly motivated by Plaintiff's complaints and reporting to engage in the aforementioned unlawful conduct.

45.     A direct, causal connection and relationship exists between Plaintiff's protected activity and reports and Defendant terminating his employment.

46.     As a direct, foreseeable, and proximate result of the retaliation and his unlawful termination, Plaintiff has been damaged and has incurred substantial lost income, lost future income, and lost employment benefits. Further, he has had trouble finding work on his field of expertise because of negative references and communications by Defendant to potential employers causing him to be "blackballed" in the area.

47.     Plaintiff has also suffered reputational damage, and non-economic damages, such as emotional distress, anxiety, stress, and depression, for which he has sought professional treatment, as well as attorneys' fees and expenses.

48.     In engaging in the aforementioned unlawful practices, Defendant acted in conscious and reckless disregard for Plaintiff's physical and emotional well-being and his protected legal rights. The conduct of Defendant was willful and outrageous due to its evil motive and/or reckless disregard for Plaintiff's protected civil rights, entitling him to an award of punitive and/or liquidated damages, as provided by law and statute.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant for Plaintiff's damages, including all actual and compensatory damages, including unpaid commissions, the value of lost pension and retirement benefits, statutory, punitive and liquidated damages, as applicable, statutory, punitive, and liquidated damages, attorney's fees, pre-judgment and post-judgment interest as allowed by law, and such other relief as is just and lawful.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the place of trial to be the United States District Court for the District of Kansas at Kansas City.

Dated: August 4, 2025                    Respectfully Submitted,

                                         HODES LAW FIRM, LLC

                                     By: */s/ Garrett M. Hodes*
                                         Garrett M. Hodes - KS. Bar. #19044
                                         6 Victory Lane, Suite 6
                                         Liberty, Missouri 64068
                                         (816) 222-4338 (Phone)
                                         (816) 931-1718 (Fax)
                                         garrett@hodeslawfirm.com

                                         ATTORNEY FOR PLAINTIFF